The next case is number 065065, John P. Lawrence against the United States. Mr. Jordan. May it please the court. My name is Harry Jordan. I'm representing the appellant here, John Lawrence. This case involves a lawsuit by Mr. Lawrence against GSA under the Tucker Act, whereby he seeks to recover more than $25,000 that has been extracted from his salary in various allowances. by the government in connection with an alleged overpayment of living quarter allowances while he worked for GSA in Europe. The government filed a motion to dismiss, claiming, one, that the court lacked jurisdiction because the suit was not based on a money-mandating source. Two, that an illegal-taking suit would not lie because, allegedly, Mr. Lawrence accepted that he owed the debt. The third reason given was that a contract action wouldn't arise under the Tucker Act because he was an appointed employee as opposed to a contract employee. The fourth item dealt with whether the court should have transferred the case to the U.S. District Court in the event that it raised issues under the Administrative Procedure Act. Of course, our position is that the court is in error for these reasons. First of all, the Tucker Act, as quite obvious, everybody knows, permits a suit against the federal government based on the Constitution, Act of Congress, or an executive order. But in order to sustain the action, there has to be a so-called money-mandating statute. And in the case of the Fisher case, which was recently decided, the court sets forth what is the money-mandating statute. And it described it as one that mandates compensation for damages sustained as a result of duties it imposes. Now, in evaluating whether a money-mandating statute exists, that same statute adopted the rule that the court, in determining a money-mandating situation, it should be fairly interpreted. There should be some liberality one way or another. Now, in this case, Mr. Lawrence, when he accepted his employment and was assigned to Europe in 1997, he was entitled to apply for living quarter allowance supplements, which he did. When he arrived in Europe, he was instructed that you provide for us, us being the management group of GSA, the cost of living, your rent, your lease, whatever, your utility bills and what have you. And we will determine what has to be filled out. We will fill out the forms. We will make the determinations. You just supply the materials. He was discouraged from even participating in the program. That same instructions were given to all the other people who were in this vehicle leasing unit of GSA in Europe. It involved something like 28 different people. So for more than six years, people would provide the information to the officer of the GSA in Europe. They would do the paperwork. They would check it to make sure it was accurate and what have you. It was reviewed again in Washington, D.C. It was reviewed a third time in Kansas City. And based on that, they determined what this allowance was to be. Mr. Lawrence and many other people were given any documents saying this is how we figure this out. This is the program. This is how it works. It was give us the information. We'll take care of it. If there's any change, we'll let you know, and you'll receive it in the allowance difference. In June of 2001, Mr. William Webster, who was the director of this particular branch, came to Europe and said, gentlemen, we have a problem. There's been negligence, mismanagement, every adjective you can think in the management of this program, and you people have been receiving these allowances substantially in excess of what you're entitled to. And we will be back to you and let you know how much each one of you must pay back. In December of that same year. There isn't any dispute between the parties, I take it, that Mr. Webster was correct that too much money had been paid, in fact. I agree with that. Okay. It's a question of how much. Well, I take it, I thought there was no dispute among the parties as to the amount of the overpayment. No. That's an assumption that's in this case. As far as my client is concerned, maybe the other people agreed with what the amount was. Right. And my client challenged it. And it came within his context. After Webster was there, a letter was sent to him and sent to these people in December, each one of them. And in my client's case, the letter said, you owe $54,000. You have 30 days to pay it. If you don't pay it, we'll start taking it out on the basis of 15%. What did your client think was the right amount? He didn't know. Well, how did he know that that was the wrong amount? He had no way of knowing. All he knew is he had been turning in these numbers. No, no, no. What I'm trying to get at is do you have a position with respect to the disparity between the amount that you think he was overpaid and the amount that the government thinks he was overpaid? I don't have a disparity in a number, but I don't agree that the number that they're claiming is due has any support because they make a bare claim for this money, and with that letter attached to it, it says rights of creditor. Now, under the rights of the creditor, you were entitled to reconsideration of what they claimed was the amount that was owed. You were entitled to a hearing to question how did this come about. He had no knowledge. He had no idea. He wanted the right to question these people who were managing. Are these numbers correct? How did you figure them out? Why is mine $54,000? What's the basis of it? Well, why would he need all of that when he submitted his expenses and he was paid more than twice what they were? Why would he need to know all of that? He's not supposed to be getting any more than that. He's in a situation of being a creditor. He had certain rights, but they said, here's what we owe you. You ought to have these rights to challenge what that is. He attempted, and this is the money mandating part of our case here. He attempted to challenge that number. To this day, he doesn't know how they came up with it other than there were printouts that were submitted. But he does know that he received that amount of money. I think he will acknowledge he received it. And he also knows how much his costs were, his expenses. He knows what his costs were, but he does not know. He did not have any access to anything that, let's say his costs were $25,000 a year. That's what he submitted to the agency in Europe. And they did all the work, and as far as he was concerned and everybody else over there, they took that $25,000 figure, matched it up with whatever the program provided, and that's the money he got. In other words, he was entitled under the program to get more than his expenses? No, he was not entitled to get more than his expenses, but he does not have, he does not know, and he has a right as a creditor before he pays this, or a debtor rather, to be told and to know how this came about. Are the figures accurate? He has a right under 41 Code of Federal Regulations, Section 105.5.6 sets forth, as the appendix to that letter on September 26th says, creditor's rights. You can request reconsideration. You can request an oral hearing to challenge this. You can request a waiver. And that's what he attempted to do. He petitioned for a hearing. He asked for a hearing. The government didn't give him an oral hearing, but it did give him a paper hearing, which amounted to nothing more than a submission of this is the computer printout, this is what you owe. He never had an opportunity to sit down with these people who managed the program and say, how did you come up with my figure? How did you do this? What's the formula? None of these people, and none of them had any information as to how this was done. He needed this information because part of his right was to seek a waiver. When he sought the waiver based on a paper hearing, the government comes back to GSA and says, well, we're not going to grant it because you had all these applications that had been filed with your form in the 1090s, and you should have been aware that you were receiving them. The answer to that is he didn't know. He had no way of knowing, neither did anybody else, whether he was real or how they were figuring this number out. Now, of the 28 people who received this money, 20 of them accepted a settlement with the government, where the government waived it. The waiver provision, which is 5 U.S. Code, Section 5584, talks about the head of the agency can waive this if it would be equitable, fair, and not in the best interest of the government to collect it, but goes on to say it cannot. Are these all in the record? Yes. All of them? It shows how much money each one of them owes? Yes. It's Exhibit 100. There's a few that we don't have. The total amount of money here is a substantial amount. About half a million dollars, I think, right? Pardon? Half a million dollars? Yes. This is 20 to the whole group. And what happened after that letter of September 26, where he said, Here are your rights to challenge it if you want to. This is what you have to do. The very next day, he gets another letter saying, We'll settle this thing for half if you agree not to sue us and what have you. He decided, I want to pursue my rights as a debtor. I want the hearing. I want the chance to file a separate waiver. They come back later and say, If you don't accept this, there'll never be another proposal for you. Twenty of the people accepted the proposal, and half of their indebtedness was waived. When it came around time to take a position on his waiver application, we found that they said, Well, we can't grant you a waiver because you didn't act in good faith. You had all these forms, all these SF 1190s, that you should have known that there was a mistake, which I say is wrong again because he had no idea what was the basis of what he was being paid. He submits his number, his cost, and they send him a check. And he's told, Don't interfere with it. We know what we're doing. The other people, they had the same situation, yet they waived theirs. They waived their debt, 50% of it. And what we're basically saying is that as a debtor, he had a right to challenge what the government was claiming as his allowance. And until those rights were exhausted, it was improper for the government to take money out of his salary. And in that provision, the 41 Code of Federal Regulations, in paragraph 101, I believe it's 12, specifically provides that gives the court the right to order the payment of money that's improperly paid out under this program. And so going back to the Fisher case, the money mandating provision, the fair representation, the fact my client never received or never had the opportunity in the procedural due process to show that the money he received was proper, this money should be returned. He should have been, and he should to this day, he's entitled to a hearing. If after this it's all done, it is determined, Yes, he owed this money, this was proper. He has no problem in paying it, but he has been denied. You mean his only objection is to the calculation of the debt? No. What he is objecting here, he has not been given procedural due process. Okay, but suppose the procedure, my question is, does your procedural due process objection go to the manner in which the debt was calculated? Or what I thought was more the point that you're making is that he ought to have gotten under the circumstances a waiver and ought to have a right to a waiver even if he owes the debt. Yes. Is it the former or the latter? It's both. Okay, but if the debt is established one way or another to be correctly calculated, then does that take the due process issue off the table as far as you're concerned? I think it would, but we don't know at this point. You can't say that the amount that is being claimed is correct or not because he has not had the due. Maybe it's not $54,000. Maybe it's actually $26,000. Maybe it's a lesser number. Is it clear that he received $93,000 in LQA payments? No. Well, yes, that's correct. And that his actual expenses were $40,000 roughly? Yes. And subtraction gives us a number in the 53. I mean, which of those numbers do you think is suspect or wrong? Well, I think the 53 number may be suspect and wrong. Well, 53 is the one that was established by subtraction. Well, the $43,000 is his actual expenses. Right. That's a solid number. There's no dispute. Okay, and the amount he received? And the amount he received, the $54,000, I think that— No, 93, I think, is the amount they say he received. Okay, the difference, the $54,000 difference. That is the amount, the excess, which he is challenging as he has not had the opportunity to have a hearing or to explore to show that this was the actual proper amount that should have been charged to him. Okay, let's hear from the other side.  Okay, Your Honor. Mr. Warlach. May it please the Court. We ask that this Court affirm the Court of Federal Claims judgment dismissing this, and I will get right to the first question, whether this debt was valid. What didn't come up in the opening part of the argument was Mr. Lawrence had an opportunity before the GSA and took advantage of it to get a hearing on the validity of this debt. He pleads as much in paragraph 14 of his complaint and went through that process. A board judge issued a final decision determining that the debt in the amounts that we've been talking about was valid. Mr. Lawrence never took that any further. That was under the regulations, that decision was final for purposes of APA review. As the Court of Federal Claims noted, there is no statute that provides any direct or appellate review of that agency decision to the Court of Federal Claims or this Court. That's a BCA decision, right, but it's not under the Contract Disputes Act, I take it. I mean, it was the BCA, right? As I understand it, it was a board judge who normally works at the GSBCA. Ah. But it's not a contract dispute issue. That's what got me confused. So it's not under the Contract Disputes Act. It's a procedure in which the agency is making its final decision, I take it, and is employing the board judge to be the adjudicator. Yes, and I'll reference the Court to 41 CFR 105-56. Everything, all the subparts in that section outlines the procedures for government service, or I'm sorry, general service administration offsets for things like living quarter allowance debts. But they don't say that we have the last word, you have to take it or we'll take it out of your pay. It doesn't say that it's not appealable. It doesn't say that there's no path of review. I'm afraid I don't understand the Court's question. Well, you say that the procedure is outlined, but here we have a request for review and an assertion that there's something wrong. There's something wrong. We need to figure out what. With the agency's decision? There's something wrong with what has transpired. The agency decision, the garnishing his pay, whatever it is that Mr. Lawrence is seeking review of. I thought you were getting ready to tell us that he has no recourse. Not exactly, but in section 41 CFR 105-56.009 states that the hearing official's decision on this type of claim is a final agency action for purposes of Administrative Procedure Act review. At the agency level, this inquiry is final. Mr. Lawrence is free to bring an APA claim in the United States District Court under the APA statute, and as we argued in our brief, he has six years from the time of any decision to do that. So he's still got three years, or two plus years to go to the district. Agreed, with respect to the validity claim. He, I think, would have longer with respect to the waiver issue. That's also an agency decision. Right. He made it a different time. You would take the position, I take it, that the waiver issue is not subject to APA review, or at least it's agency action committed to agency discretion by law, or is that your position? I think we would take the position, first, that's not subject to this court's jurisdiction. We never reached it. Right. And second, it's arguable. As to whether it's committed to agency discretion by law. But in any event, it's the district court in an APA proceeding that is the proper forum for deciding whether there's review of that waiver decision or not. Yes, Your Honor. Okay. With that admission, and I'll also note that counsel has repeatedly stated that his client is a debtor to the government, his takings claim must fail. He admits that he has no property interest at all in this money, and so the court properly dismissed that claim for failure to state a claim. Any exaction claim that may have been inferred from the complaint, which I'll note does not specifically complain that there has been an illegal exaction, it sort of came up de facto through the dismissal proceedings. That, in the first step of that, for an exaction claim, there has to be the fact that it is Mr. Lawrence's money. He has admitted that it's not his money. He owes debt. It's the government's money. Well, he's not saying that today. He's saying, I don't know whether I owe debt. I haven't had a chance to adjudicate that. Contrary, with all due respect, Your Honor, I think he may be saying a bit of both things. He's admitting that his client is a debtor. He is complaining that maybe the amount is wrong, and more broadly that the agency decision was not correct. Right, but if he's not conceding the entire debt, then I suppose he's, in effect, saying that you're exacting at least some of the money. You're exacting his money that is his, not yours. And that would seem to me to bring him within the scope of the illegal exaction doctrines, don't you think? If, as a matter of fact, that was true, or even as a matter of pleading, but the fact is this is the first time, or at least in his reply brief, that this court or the Court of Federal Claims has heard a claim like that. Let me ask you this about the way the waiver issue plays into the illegal exaction claim, at least possibly as a matter of the way you would frame this argument. His argument is that the denial of the waiver is arbitrary, and therefore the taking of funds from him is unlawful because of its arbitrariness. Now you say it doesn't—I take it your position is as long as those funds are not demonstrated to be his, that he doesn't have an illegal exaction claim, no matter how arbitrary the process of the taking of the funds is. Is that your position? I think our position is, Kevin, to whether he's stated an exaction claim. If he doesn't state that the money is his, we do not even get on to anything else related to that claim. He has failed to fulfill one of the elements in his pleading, and therefore it's dismissible. Well, you're saying he has to prove his case before he can get into court. What he wants, the jurisdiction is based on the allegations. He says it's not yours, it's mine, at least some of it. I want a hearing to work it out. I think there may be a misunderstanding. In examination of the complaint here, nowhere does Mr. Lawrence state that any part of this money is his. He refers five times to overpayments in paragraphs 15, 16, 21, twice, and 22 of his complaint. He admits in paragraph 14 that he's had a hearing on the validity of the debt and that he lost, and then he pursued exclusively his right to have that admitted debt waived. He doesn't admit to the entire debt? He challenges the amount? With all due respect, Your Honor, in his pleadings, he does not. Before this court, in his argument and in his reply, finally, he does say that, yes, Mr. Lawrence challenges the amount. I think, actually, the amount issue, the first I've seen is here today. Suppose, hypothetically, he had expressly put in his complaint an assertion that he is not satisfied that the amount is correct and that some of the money that is attempted to be collected from him, at least some of the money, is, in fact, he believes, his. Would that state a claim for illegal exaction? I believe that would depend somewhat on – let me ask the court a question. Sure. Are we still addressing this in terms of the withholding decision? Yes. I'm sorry. Yeah. The waiver decision? Well, the withholding. In other words, he would be saying in that setting, sure, you, before the BCA, decided that I owe $53,000. I don't think that's right, and I'm going to, in effect, get review of that decision through illegal exaction cause of action in the Court of Federal Claims by asserting that that number is wrong and, therefore, by your withholding, you are taking some, at least, of my money. I think Mr. Lawrence would be doing an end-around around the jurisdictional statutes and avoiding his APA. The question, I guess, what I'm really saying, if you put it down into the – basically, what I'm saying is, does he have an alternative way of getting review of the BCA decision in the Court of Federal Claims under the illegal exaction theory? And if not, why not? What is wrong with his framing his case that way? Other than, you know, normally one only has one route to review, but there are circumstances in which you can get review in different places. Why not have that option open through illegal exaction? No. He shouldn't be doing that. The APA and other statutes makes it pretty clear that review of administrative decisions are supposed to happen pursuant to that statute in the United States District Courts. If he's – if Mr. Lawrence is going to simply plead, despite the fact that he has the administrative decision completely to the contrary, that the money is not owed to the government, asking this Court, in essence, to ignore that, and also to ignore Congress's imperative that persons who have or want to seek review of their agency action should go to the district courts. As a policy matter, something like that, we would take the position. It's not something we would encourage or ask this Court to do. In fact, we'd refrain from establishing case law that would allow that sort of technical evasion. Thank you. I believe that touches on everything that Mr. Lawrence has talked about on this appeal. Okay. Any more questions? Any more questions for Mr. Rowan? Okay. For those reasons, for everything in our brief, and in the Court of Federal Claims opinion, we ask that this Court affirm. Thank you, Mr. Warlock, and thank you, Mr. Jordan.